UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
TRUSTEES OF THE PAVERS AND ROAD　　　　　:
BUILDERS DISTRICT COUNCIL WELFARE,　 :
PENSION, ANNUITY, and APPRENTICESHIP,　:　　REPORT &
SKILL IMPROVEMENT AND SAFETY FUNDS,　:　　RECOMMENDATION
　　　　　　　　　　　　　　　　　　　　　:　　20-CV-1980 (PKC) (SMG)
　　　　　　　　　　　　　Plaintiffs,　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　-against-　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
SHELBOURNE CONSTRUCTION CORP.　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Defendant.　　　 :
　　　　　　　　　　　　　　　　　　　　　:
-----------------------------------------------------------------x

GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiffs, Trustees of the Pavers and Road Builder District Council Welfare, Pension, Annuity, and Apprenticeship, Skill Improvement and Safety Funds (collectively, the "Funds"), bring this action pursuant to the Employee Retirement Income Security Act ("ERISA") of 1974, 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor-Management Relations Act ("LMRA") of 1947, 29 U.S.C. § 185. *See* Compl., Dkt. 1. Plaintiffs seek to recover delinquent employer contributions from defendant Shelbourne Construction Corporation ("Shelbourne"), as well as accrued interest, liquidated damages, and attorney's fees and costs. *Id.*

Upon plaintiffs' application, Dkt. 7, and in light of defendant's failure to appear in or otherwise defend this action, the Clerk of Court noted the default of the defendant on July 27, 2020, Dkt. 8. Plaintiffs subsequently filed a motion for default judgment against Shelbourne. Dkt. 9. The Honorable Pamela K. Chen has referred the motion to me for report and recommendation. Order dated September 21, 2020. For the reasons that follow, I respectfully recommend that the motion be granted and that judgment be entered in the amounts indicated

below.

## FACTUAL BACKGROUND

According to the Complaint, plaintiffs are the trustees of the Funds, which are in turn multiemployer employee benefit plans as defined by ERISA.  Compl. ¶ 4.  Defendant Shelbourne is a domestic corporation organized under the laws of the State of New York.  *Id.* ¶ 5.  According to the Declaration of Keith Loscalzo, an officer of the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union"), Shelbourne entered into a collective bargaining agreement (the "CBA") with the Union on January 19, 2006.  Compl. ¶ 6; Decl. of Keith Loscalzo ("Loscalzo Decl.") ¶¶ 4-5, Dkt. 10; CBA, Ex. A, Dkt. 11-1.  The CBA requires Shelbourne to pay specified contributions to the Funds and related entities on behalf of which the Funds act as collection agents in connection with the work performed within the trade and geographical jurisdiction of the Union ("Covered Work"); requires Shelbourne to pay specified dues check-offs and other contributions to the Union for each hour of Covered Work performed by Shelbourne employees; requires that contributions and remittance reports detailing the number of Covered Work hours performed by employees be submitted on or before the 35th day following the close of the month in which the hours were worked; and requires Shelbourne to comply with payroll audits to confirm that it is complying with these obligations.  Compl. ¶¶ 7-10; Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Mem. of Law") at 1-2, Dkt. 14; Loscalzo Decl. ¶¶ 8-12.

The CBA currently in effect states that Shelbourne is bound by all of the terms of the Agreements and Declarations of Trust ("Trust Agreements"), which provide that the Funds may establish policies and rules pursuant to the Agreements.  Compl. ¶¶ 13-14; CBA, Art. IX, § 1(b), Dkt. 10-1; Decl. of Joseph Montelle ("Montelle Decl.") ¶¶ 5-6, Dkt. 11.  The Funds have

promulgated a Policy for Collection of Delinquent Fringe Benefit Contributions ("Collection Policy"), to which Shelbourne is bound.  Compl. ¶ 15.  Under Article II of this policy, if Shelbourne fails to make contributions when due, Shelbourne is liable to the Funds for interest at an annual rate of 10% and liquidated damages equal to 10% of the amount of any unpaid contributions, as well as reasonable attorney's fees and costs in the event that legal action must be commenced.  *Id.* ¶¶ 15-16; Loscalzo Decl. ¶ 14; Montelle Decl. ¶ 9.

Plaintiffs allege that Shelbourne failed to report the number of hours of Covered Work performed by its employees for the period of November 2019 through February 2020, and that, as such, the dollar amount of the contributions that Shelbourne owes for this period remains unknown to plaintiffs.  Compl. ¶ 19; Montelle Decl. ¶ 10.  Since this action was filed on April 30, 2020, plaintiffs allege that Shelbourne has continued to fail to report the number of hours of Covered Work performed by each of its employees for the period of March through June 2020.  Mem. of Law. at 2; Montelle Decl. ¶ 11.  Plaintiffs further allege that Shelbourne owes interest on late payment of contributions for the period September 2018 through September 2019 in the amount of $1,135.24.  Compl. ¶ 20.

Plaintiffs seek: (1) estimated contributions in the amount of $59,369.12 and estimated union assessments in the amount of $3,941.44 for the period of November 2019 through June 2020; (2) interest at an annual rate of 10% on the estimated delinquent contributions, for a total of $2,423.82; (3) liquidated damages in the amount of 10% of the estimated delinquent contributions, for a total of $5,936.91; (5) late payment interest in the amount of $1,135.24 for the period of September 2018 through September 2019; and (5) reasonable attorney's fees and costs of $2,668.08.  *Id.* ¶¶ 21-22; Mem. of Law. at 3; Montelle Decl. ¶ 13-18.

3

**DISCUSSION**

**I.      Legal Standards**

    A.      *Standard of Review*

Once found to be in default, a defendant is deemed to have admitted all the well-pleaded allegations in the complaint pertaining to liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., et.al.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs., Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks omitted); *accord Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action).

    B.      *Applicable Law*

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies the damages to be awarded when judgment is entered in favor of the plan.  See 29 U.S.C. § 1132(g)(2).  These damages include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

*Id.*; *see also Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1504 n.2 (2d Cir. 1995).

4

**II.      Liability**

Plaintiffs have established defendant's liability as a matter of law.  As stated above, plaintiffs claim that defendant Shelbourne violated the terms of the CBA and ERISA by failing to timely report the number of hours of Covered Work performed by its employees for the period of November 2019 through February 2020, and that, as such, the contributions that Shelbourne owes for this period remains unknown to plaintiffs.  Compl. ¶ 19; Montelle Decl. ¶ 10.  Plaintiffs further allege that since this action was filed on April 30, 2020, Shelbourne has continued to fail to report the number of hours of Covered Work performed by each of its employees for the period of March 2020 through June 2020.  Mem. of Law. at 2; Montelle Decl. ¶ 10-11.  Plaintiffs assert that, pursuant to the Collection Policy, in the event that defendants fail to submit remittance forms showing the amount of the delinquency, the average of the monthly payments actually submitted to the employer for either the last three months or the last 12 months may be used to estimate the delinquent amount owed.  Montelle Decl. ¶ 8.  Finally, plaintiffs allege that pursuant to the CBA, defendant Shelbourn owes interest on the late payment of contributions for the period September 2018 through September 2019.  Compl. ¶ 20.

Pursuant to Section 515 of ERISA, defendant is required to make contributions to the Funds in accordance with the terms of the CBA.  *See* 29 U.S.C. § 1145.  Thus, plaintiffs have alleged the elements necessary to state a claim against defendant Shelbourne under ERISA.  Based on a review of the allegations in the Complaint, which are undisputed at this time, and the supporting documentation submitted in connection with this inquest, including the terms of the CBA, Trust Agreements, and Collection Policy, the Court finds that plaintiffs have sufficiently alleged all of the elements necessary to establish liability under each of the claims they have brought against defendant.  Thus, entry of a default judgment is warranted.  *See* 29 U.S.C. § 1132(g)(2).

Not only have plaintiffs stated a valid claim, but it is beyond dispute that defendants are in default. Defendant has not responded to the Complaint, nor to the present motion for default judgment. Given the numerous opportunities afforded defendants and the amount of time which has elapsed, the Court finds no compelling reason to delay further. Accordingly, it is respectfully recommended that plaintiffs' motion for entry of a default judgment be granted.

### III. Damages

While the allegations of a complaint pertaining to liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Greyhound Exhibitgroup,* 973 F.2d at 158. Rather, a court must ensure that there is a basis for the damages sought by a plaintiff before entering judgment in the amount demanded. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991) (holding that a court is not required to conduct a hearing to determine the basis for damages in every case); *Fustok*, 873 F.2d at 40 (noting that a court may rely on detailed affidavits and documentary evidence as the basis for determining damages to be awarded in a default judgment).

Plaintiffs have submitted in support of their motion the declarations of Keith Loscalzo, an officer of plaintiff Highway, Road and Street Construction Laborers Local Union 1010; Joseph Montelle, Administrator of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds; and Katy Kabala, Collections/Contributions/Reciprocity Coordinator for Zenith American Solutions, Inc. ("Zenith"), the third-party administrator to the Funds. *See* Loscalzo Decl.; Montelle Decl.; Decl. of Katy Kabala ("Kabala Decl."), Dkt. 12. These declarations detail the calculation of

6

defendant's estimated contributions as per the CBA, as well as calculations of defendant's late payment interest. Further, plaintiffs have provided copies of the Trust Agreements and Collection Policy, along with the remittance reports which form the basis by which these calculations were made. *See* Exs. B, Trust Agreement, Dkt. 11-1; C, Collection Policy, Dkt. 11-2. Defendant has not submitted any opposition. Accordingly, and for the reasons that follow, I conclude that a hearing on the issue of damages is unwarranted and I respectfully recommend that plaintiffs be awarded the estimated contributions they claim, together with interest, liquidated damages, late payment interest, and attorney's fees and costs as calculated below.

   A. *Estimated Contributions and Union Assessments*

According to the Collection Policy, "[w]here an employer is two or more months delinquent in making its Contributions and has not submitted remittance forms showing the employees that performed work and the hours worked, the Board may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last three (3) months for which payments and reports were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted. . . . The projection may be used as a determination of payments due for each delinquent month, and may be used for purposes of any lawsuit." Collection Policy, Art. IV (9).

At the time this action was commenced, Shelbourne had failed to report the number of hours of Covered Work performed by each of its employees for the period of November 2019 through February 2020. Montelle Decl. ¶ 10. Since this action has been commenced, Shelbourne has continued to fail to report the number of hours of Covered Work performed by each of its employees. *Id*. ¶ 11. Therefore, according to plaintiffs, Shelbourne has failed to remit

7

contributions in an unknown amount for Covered Work performed between November 2019 and June 2020. *Id.*

As provided under the Collection Policy, the Funds used reports actually submitted by Shelbourne for the prior 12 months for which payments were made in order to estimate the amount owed for Covered Work performed between November 2019 and June 2020. *Id.* ¶ 12. Based on the reported and paid contributions made by Shelbourne between November 2018 and October 2019, the average monthly amount owed in contributions was $7,421.14 and the average monthly amount owed in union assessments was $436.43. *Id.* ¶ 13-14; Ex. D. As eight months have elapsed between November 2019 and June 2020, defendant owes a total of $59,369.12 ($7,421.14 x 8) in estimated contributions and $3,491.44 ($436.43 x 8) in estimated union assessments, for a total of $62,860.56 owed in estimated contributions and union assessments. Montelle Decl. ¶ 14; Pls.' Mem. at 8; Ex. E.

Accordingly, having reviewed the plaintiffs' calculations, I respectfully recommend that the Court award plaintiffs a total of $62,860.56, representing $59,369.12 in estimated contributions and $3,491.44 in estimated union assessments for the period of November 2019 through June 2020.

B.   *Interest on Delinquent Contributions*

Pursuant to the CBA, where an employer fails to pay contributions as required, the employer shall be responsible for "annual interest at the rate of 10% per annum." Loscalzo Decl. ¶ 14; Montelle Decl. ¶ 9; Collection Policy, Art. II. Under the CBA and Collection Policy, interest on the delinquent contributions is calculated from the date that each monthly contribution was due. Montelle Decl. ¶ 16. A spreadsheet setting forth the computations of interest on the amount of estimated delinquent contributions through September 16, 2020, the date of Mr. Montelle's Declaration, has been attached to Mr. Montelle's Declaration and shows

the calculation of the interest owed as $2,423.82. *Id*.; Ex. F.

This total was reach by calculating the per diem interest rate based upon the average estimated monthly contributions ($7,421.14), discussed above, which is equal to $2.03 (7,421.14 x 10% ÷ 365 days). This per diem interest rate was then multiplied by the number of days that had elapsed since each payment became due. This method yields a total of $2,423.82 in interest owed. Ex. F.

Accordingly, having reviewed the plaintiffs' calculations, I respectfully recommend that the Court award plaintiffs $2,423.82 in interest on the estimated delinquent contributions for the period of November 2019 through June 2020.

  C. *Liquidated Damages*

ERISA provides for liquidated damages "in an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). For purposes of calculating liquidated damages, "delinquent contributions" consist of those contributions that were delinquent as of the day the action was filed. *See Iron Workers Dist. Council of W. N.Y.*, 68 F.3d at 1507.

Here, pursuant to the CBA, where an employer fails to pay contributions as required, the employer shall be responsible for liquidated damages at a rate of 10%. Loscalzo Decl. ¶ 14; CBA, Art. IX, § 5(c); Collection Policy, Art. II. As discussed above, Shelbourne owes the Funds a total $59,369.12 in contributions, and plaintiffs accordingly seek an award of $5,936.91 in liquidated damages ($59,369.12 x 10%). Montelle Decl. ¶ 17; Pls.' Mem. at 8.

Accordingly, I respectfully recommend that the Court award plaintiffs $5,936.91 in liquidated damages on the estimated delinquent contributions and union assessments for the period of November 2019 through June 2020.

9

D.     *Late Payment Interest*

Pursuant to the CBA, and in addition to interest due on unpaid contribution, Shelbourne is liable for interest on contribution payments it made late. Montelle Decl. ¶ 15; Collection Policy, Art. II; Kabala Decl. ¶ 9. If an employer fails to make contributions when due, the employer is "liable for the payment of delinquent Contributions with interest at the rate of ten percent (10%) per annum (calculated form the Due Date)." *Id*. ¶ 9; Collection Policy, Art. II; Montelle Decl. ¶ 9. Plaintiffs engage the services of Zenith to, *inter alia*, monitor the payments of benefit contributions and union assessments. Kabala Decl. ¶ 6. In this capacity, Zenith monitors the late payment interest (LPI) accrued by employers when employers pay benefit contributions beyond their due date. *Id*. ¶ 8. Plaintiffs have provided Shelbourne's LPI Report which indicates the months for which contributions were paid late, the dates on which plaintiffs received the contributions, and the late payment charges which have been assessed to Shelbourne. Kabala Decl. ¶¶ 8, 10-13, Ex. G, LPI Report, Dkt. 12-1. Plaintiffs have determined that, between September 2018 and September 2019, Shelbourne owed late payment interest in the total amount of $1,135.24. Kabala Decl. ¶ 16; LPI Report; Montelle Decl. ¶ 15.

In her Declaration, Katy Kabala details the method by which she and Zenith calculate the late payment interest. Kabala Decl. ¶ 14. First, the number of days that the contributions was paid late is calculated, then the daily interest rate is calculated by multiplying the contribution amount due by the 10% annual interest rate found in the CBA, which is then divided by the full year of 365 days. *Id*. Finally, this daily rate is applied to the number of days that the payment was rendered late. *Id*. Using this method, Ms. Kabala determined that, for the period from September 2018 through September 2019, Shelbourne owes plaintiffs late payment interest in the total amount of $1,135.24. *Id*. ¶ 16; LPI Report; Montelle Decl. ¶ 15.

10

Accordingly, I respectfully recommend that the Court award plaintiffs a total of $1,135.24 in late payment interest due between September 2018 and September 2019.

E.   *Attorney's Fees and Costs*

Pursuant to the CBA, where an employer fails to pay contributions as required, the employer shall be responsible for costs and attorney's fees. Loscalzo Decl. ¶ 14; CBA, Art. IX, § 5(b). An award of attorney's fees under ERISA, moreover, is mandatory. 29 U.S.C. § 1132(g)(2)(D); *Iron Workers Dist. Council of W. N.Y.*, 68 F.3d at 1506; *Merrick Associated Mkt., Inc.*, 2012 WL 4049845, at *2 E.D.N.Y. Aug. 21, 2012). As such, plaintiffs seek to recover their attorney's fees and costs. Pls.' Mem. at 7-9; Montelle Decl. ¶ 18; Declaration of Adrianna R. Grancio, Esq. ("Grancio Dec."), Dkt. 13.

In the Second Circuit, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008) (internal quotations omitted). In performing this analysis, the court has "considerable discretion." *Id.* at 190.

Claims for attorney's fees in the Second Circuit generally must be supported by contemporaneous time records which "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). However, submissions supported by "[a]ttorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous records satisfy the rationale underlying *Carey* and suffice to permit recovery of attorneys' fees." *David v. Sullivan*, 777 F. Supp. 212, 223 (E.D.N.Y. 1991).

11

Courts in this district have recently approved hourly rates ranging from $300 to $450 hour for partners, $200 to $300 for senior associates, and $100 to $200 for junior associates. *Cabrera v. Schafer*, 2017 WL 9512409, at *11 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017); *Gesualdi v. Lubco Transp. Inc.*, 2017 WL 946297, at *4 (E.D.N.Y. Feb. 22, 2017). Courts have also recognized "the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of the typical ranges." *Gesualdi*, 2017 WL 946297, at *4 (internal quotation marks omitted).

Here, plaintiffs have submitted time records that indicate the date, duration, and nature of the work performed by their counsel. Grancio Decl. Ex. K ("Timesheets"), Dkt. 13-4. Ms. Grancio, a member of the New York State bar and a 2016 graduate of St. John's University School of Law, is an associate at Virginia & Ambinder, LLP. Grancio Decl. ¶ 10. Ms. Grancio has "handled the prosecution of numerous ERISA collection lawsuits" and bills at a rate of $250 per hour. *Id*. In addition to Ms. Grancio, Virginia & Ambinder, LLP billed its legal assistants, Emily Barasmain and Julia Burstein, at a rate of $80 per hour for work performed in connection with this matter. *Id*. ¶ 11. Plaintiffs' attorney and legal assistants together expended a total of 10 hours on this matter, for a total fee of $2,194.00. *Id*. ¶ 13; Timesheets.

Ten hours is a reasonable amount of time to prepare a complaint and motion for entry of default judgment, particularly one as well-documented as plaintiffs' motion is here. With respect to the hourly rate sought for Ms. Grancio's time, given the range of hourly rates which courts in this district have recently awarded, I respectfully recommend a fee award based upon a rate of $250 per hour. As to Ms. Barasmain and Ms. Burstein, the requested hourly rate of $80 per hour for legal assistants is reasonable. *Trs. of Local 7 Tile Indus. Welfare Fund v. Larsen Marble &*

12

*Tile, LLC*, 2018 WL 6344188, at *1 (E.D.N.Y. Dec. 5, 2018); *New York City Dist. Council of Carpenters v. Trs. of New York City Dist. Council of Carpenters Welfare Fund*, 2018 WL 3768586, at *5 (E.D.N.Y. July 23, 2018); *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Sanders Const.*, 2015 WL 1608039, at *4 (E.D.N.Y. Apr. 10, 2015) (holding $90 to be a reasonable hourly rate for the work of legal assistants). As such, I respectfully recommend a fee award based upon a rate of $80 per hour as to Ms. Barasmain and Ms. Burstein, and an award of fees in the amount of $2,194.00.

Finally, plaintiffs seek $474.08 in costs, representing the filing fee, service fee, and postage incurred in this action. Grancio Decl. ¶ 15. Plaintiffs are entitled to recover "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks and citation omitted). I find plaintiffs' costs to be reasonable and respectfully recommend that plaintiffs be awarded $474.08 in costs.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs' motion for default judgment against defendant be granted, and that a final judgment be entered awarding damages as follows:

(i)     $59,369.12 in estimated delinquent contributions;

(ii)    $3,941.44 estimated union assessments;

(iii)   $2,423.82 in interest on the estimated delinquent contributions;

(iv)    $5,936.91 in liquidated damages on the estimated delinquent contributions;

(v)     $1,135.24 in late payment interest; and

(vi)    $2,668.08 in attorney's fees and costs.

Any objections to the recommendations made in this Report must be submitted within fourteen days after filing of the Report and, in any event, no later than January 18, 2021. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

Plaintiffs shall forthwith serve this Report and Recommendation on defendant by letter sent to its last known address and by email sent to its last known email address and file proof of service with the Court.

/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
January 4, 2021

*U:\#JH 2020-2021\Trustees V. Shelbourne Construction Corp. 20-1980\Trustees V. Shelbourne Construction Corp. 20-1980 - ERISA Default RR FINAL.Docx*